UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PETER SCHNEGELBERGER,          )
                               )
          Plaintiff,           )
                               )
v.                             )          Case No. 4:22-CV-781 RHH
                               )
KILOLO KIJAKAZI,               )
Acting Commissioner of Social Security,  )
                               )
          Defendant.           )

## MEMORANDUM AND ORDER

Plaintiff Peter Schnegelberger seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

I.      **Standards for Determining Disability Under the Social Security Act**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

1

whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611.  To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her

past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled.  20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## II.  Background, Procedural History, Evidence Before the ALJ, and ALJ Decisions

On April 12, 2017, Plaintiff filed an application for SSI, alleging he was disabled as of October 27, 2015[1], due to bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (Tr. 104, 222-227)  The Social Security Administration (SSA) initially denied Plaintiff's claim in July 2017, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 120-126, 127-129)  The SSA granted Plaintiff's request for review and conducted a hearing in December 2018.   (Tr. 57-78)

---

[1] Plaintiff later amended his alleged onset date to April 12, 2017.  (Tr. 240)

Plaintiff, born November 22, 1976, testified during the first hearing before the ALJ that he lived with his girlfriend, who worked full-time outside the home.  (Tr. 62)  Plaintiff said that on a day-to-day basis he was able to perform basic tasks for himself, including toileting, showering and preparing meals.  (*Id.*)  He further cared for three dogs, including feeding and walking them.  (Tr. 63)  With respect to education, Plaintiff stated he had obtained his GED.  (Tr. 64)  He last worked in 2016, as a soccer referee.  (*Id.*)[2]

Plaintiff stated he suffered from both mental illness and the side effects of medications he took for said illness.[3]  (Tr. 66)  He claimed his sleep was affected, and he had "brain fog" all the time.  (*Id.*)  Plaintiff further stated that due to his PTSD, he was comfortable only in his own home, and he avoided going out and interacting with other people as much as possible.  (Tr. 67)   He testified that he can do chores for awhile, but then gets overwhelmed and shuts down.  (*Id.*)

Plaintiff stated that he had been in the hospital ten times for depression.  (Tr. 71)  He acknowledged that he no longer required hospitalization, because he had learned to ask for help before reaching a crisis point.  (Tr. 71-72)

A vocational expert testified at the December 2018 hearing.  (Tr. 74-77)  The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work history, able to work at a medium exertional level with the following limitations:

> [This individual] is limited to only simple, routine, repetitive tasks, not at a production rate pace—defined as no assembly line work--few changes in work setting, with only occasional interactions with supervisors, co-workers; no contact with the general public[.]

---

[2] Plaintiff stated that the last year he was employed, he missed five days of work per month on average, due to physical exhaustion, physical pain and anxiety.  (Tr. 70)  Her further asserted his condition was worse at present.  (*Id.*)

[3] Plaintiff stated the medications for his mental illness were "like a Band-aid on a gunshot wound." (Tr. 72)  In other words, the medications did not alleviate the cause of his PTSD, they only relieved the symptoms a bit.  (*Id.*)

4

(Tr. 75)  The vocational expert stated that while such an individual would not be able to perform Plaintiff's past work, there existed unskilled jobs in the national economy that such an individual could perform, such as material mover, laundry or dry-cleaning worker, and janitorial worker.[4] (Tr. 75-76)  When the ALJ changed the hypothetical, to specify that the individual would be absent from work five days per month, the vocational expert opined that said person would not be able to perform any work in the national economy.  (Tr. 76)  The vocational expert further stated the individual would not be employable if he (a) needed redirection to task two times a day after the training period, (b) was off-task ten percent of the time or more, or (c) was unable to respond appropriately to directions from his supervisor or co-workers.  (Tr. 76-77)

In a decision dated March 5, 2019, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff:  (1) had not engaged in substantial gainful activity since April 12, 2017, the application date; and (2) had the severe impairments of degenerative disc disease, bipolar disorder, borderline personality, PTSD, and major depressive disorder, that significantly limited his ability to perform basic work activities as required by SSR 85-28.  (Tr. 36)[5]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  (Tr. 36)

---

[4] The vocational expert noted that all of her proposed jobs were classified as medium exertional level.  (Tr. 75-76)

[5] The ALJ found Plaintiff's gastroesophageal reflux disease ("GERD"), hyperlipidemia and cannabis abuse were nonsevere impairments, as they did not impose more than a minimal effect on Plaintiff's work-related functional limitations.  (Tr. 36)  She further found Plaintiff's degenerative joint disease of the bilateral hips and fibromyalgia were not medically determinable impairments, as there were no definitive diagnoses in the record supported by objective findings. (*Id.*)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 39)  As support, she recounted in detail the nature of Plaintiff's treatment history, both physical and mental.  (Tr. 39-45)

After "careful consideration of the entire record", including the medical opinions and prior administrative medical findings, the ALJ determined that Plaintiff had the RFC to perform medium work, with the following limitations:

> [S]imple, routine, repetitive tasks not at a production rate pace (defined as no assembly line work), few changes in work setting with only occasional interactions with supervisors, coworkers and no contact with the general public.

(Tr. 38)  Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as material mover, laundry worker, and janitorial worker.  (Tr. 49)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 12, 2017, the date the application was filed.  (Tr. 50)  Plaintiff filed a request for review of the ALJ's decision, but the SSA Appeals Council denied the request.  (Tr. 181-183, 1-7)

Plaintiff filed a Complaint for Judicial Review of Decision of the Commissioner of Social Security with this Court on April 6, 2020, arguing the ALJ erred in failing properly to consider the medical opinion evidence, and in failing to include a proper credibility evaluation.  (Case No. 4:20CV485 JMB, ECF Nos. 1, 22).  In an Order entered April 15, 2021, United States Magistrate Judge John M. Bodenhausen granted Defendant's unopposed motion to reverse the decision of the Commissioner of Social Security, and remanded the case.  (*Id.*, ECF No. 30).

6

On August 6, 2021, the SSA Appeals Council entered an Order vacating the final decision of the Commissioner of Social Security, and remanding the case to the ALJ for proceedings consistent with the Order of the Court.  (Tr. 1086-1093)  Specifically, the Appeals Council noted further evaluation of both the persuasiveness, supportability and consistency of the medical evidence of record and Plaintiff's symptoms was necessary.  (Tr. 1088-1090)  The Appeals Council stated that upon remand, the ALJ was to do the following:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912).  The additional evidence may include, if warranted and available, a consultative examination and medical source opinions about what the claimant can still do despite the impairments.
- Give further consideration to the medical source opinions pursuant to the provisions of 20 CFR 416.920c.
- Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929).

(Tr. 1090)

The SSA conducted a second hearing in April 2022.   (Tr. 1876-1897)  Plaintiff testified that he still lived with his girlfriend and two dogs.  (Tr. 1881-1882)  Plaintiff stated he was able to toilet, shower, feed and dress himself unassisted, but that at times he lacked motivation to do so.  (Tr. 1881)  Plaintiff stated he met with his psychiatrist every two to six weeks, and saw his therapist weekly.  (Tr. 1885-1886)  He said he avoided places where he would have to interact with others, instead shopping online or having items delivered.  (Tr. 1886-1887)  Plaintiff testified that he felt anxious around others, as if there were an "emptiness in the pit of [his] stomach", and that

consequently he rarely left the house.  (Tr. 1887)[6]  He explained that his mental illness affected every aspect of his life, including his personal well-being, self-care, ability to do housework, and relationships.  (Tr. 1887-1888)  For example, Plaintiff stated he only bathed a few times a week, and did not cook or clean as often as in the past, as his days were filled with "apathy and disgust." (Tr. 1889)  He said he spent most of his days listening to music and caring for his dogs, and he no longer watched television or read.  (Tr. 1890)  Plaintiff acknowledged he was able to manage his medications, drive, and perform simple household chores, albeit irregularly.  (Tr. 1890-1892) Finally, Plaintiff stated that he no longer took pleasure in activities he used to enjoy, such as fishing, reading and being in nature.  (Tr. 1893)

A vocational expert testified at the second hearing.  (Tr. 1893-1897)  The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work history, who was able to perform work at a light exertional level, with the following limitations:

> Occasional ramps and stairs.  No ladders, ropes, or scaffolds.  Occasional stoop, kneel, crouch, crawl.  No unprotected heights.  No hazardous machinery.  Only occasional exposure to extreme cold or vibrations, who is able to learn, remember, and carry out simple routine tasks, use reason and judgment to carry out such tasks and use reason and judgment to complete those tasks in a timely manner while ignoring or avoiding distractions with only gradual changes in job settings and duties.  Is able to sustain an ordinary, routine, and regular attendance without needing more than the standard number of breaks or rest periods.  But have only occasional interactions with supervisors and coworkers.  No contact with the general public.  No tandem tasks.

(Tr. 1894-1895)  The vocational expert stated that while such an individual would not be able to perform Plaintiff's past work, there existed unskilled jobs in the national economy that such an

---

[6] Plaintiff testified that he had no social interactions, other than therapy sessions and Walmart pick-ups.  (Tr. 1887)

individual could perform, such as photocopy machine operator, mail clerk, and office helper.[7]  (Tr. 1895)  When the ALJ changed the hypothetical to specify that the individual would essentially need to work in isolation, with only occasional interaction with supervisors and no interaction with coworkers or the general public, the vocational expert opined that said person would not be able to perform any work in the national economy.  (Tr. 1895)  The vocational expert further stated the individual would not be employable if he (a) was off-task more than ten percent of the time, (b) was absent more than one day per month, or (c) needed more than the allowable number of rest breaks.  (Tr. 1896)

In a decision dated May 23, 2022, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff:  (1) had not engaged in substantial gainful activity since April 12, 2017, the application date; and (2) had the severe impairments of degenerative disc disease, fibromyalgia, degenerative joint disease of the right knee, bipolar disorder, borderline personality disorder, PTSD, and major depressive disorder, that significantly limited his ability to perform basic work activities as required by SSR 85-28.  (Tr. 1042)[8]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  (Tr. 1042)

---

[7] The vocational expert noted that all of her proposed jobs were classified as light exertional level. (Tr. 1895)

[8] The ALJ found Plaintiff's GERD, hyperlipidemia, cannabis abuse, adhesive otitis media, immunodeficiency with antibody defects, irritable bowel syndrome, and bilateral sensorineural hearing loss were nonsevere impairments, as they either had been successfully treated, controlled or stabilized, or otherwise did not more than minimally affect Plaintiff's ability to perform basic work activities.  (Tr. 1042)  The ALJ did note, however, that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."  (*Id.*)

9

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 1047)  As support, she recounted in detail the nature of Plaintiff's treatment history, both physical and mental.  (Tr. 1047-1057)

The ALJ considered the numerous medical opinions in the record.  (Tr. 1057-1061)  As relevant here[9], she found the July 26, 2017 opinion of the state agency psychological consultant, Barbara Markway, Ph.D., partially persuasive, as it was supported by a review of Plaintiff's treatment history, but "additional medical evidence received at the hearing level is consistent with the finding of moderate limitations in all functional areas."[10]  (Tr. 1057)  The ALJ specifically referenced Plaintiff's "presentation during treatment of depressed mood and restricted affect, along with his closing of his eyes."  (*Id.* (citations omitted)).

The ALJ considered the November 21, 2016 opinion of Plaintiff's prior treating psychologist, Amy Frankel, Ph.D., who found Plaintiff unable to meet competitive standards in, among other areas, his ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically-based symptoms.  (Tr. 478)  Dr. Frankel further stated Plaintiff would miss more than four days of work each month due to his impairments or treatment.  (Tr. 480)  The ALJ discounted Dr. Frankel's opinion as follows:

---

[9] Plaintiff does not challenge the ALJ's findings with respect to his physical disabilities, and so the Court does not address them in this Order.
[10] Dr. Markway found Plaintiff had only mild limitations in his ability to understand, remember and apply information, and to maintain concentration, persistence or pace.  (Tr. 1057)

> While the doctor does have a treating relationship with the claimant, the treatment history is quite brief[11] and it is prior to the amended alleged onset date.[12]  This assessment is somewhat supported by records prior to the amended alleged onset date, where the claimant was hospitalized with severe symptoms.  However, the later records showed that he was responding well to treatment, had not been hospitalized or had emergency department visits regarding his mental health.  Additionally, this assessment is not consistent with the generally normal mental status examination[s] throughout the later records.

(Tr. 1058 (citations omitted)).

The ALJ next considered the January 11, 2017 opinion of Plaintiff's treating psychiatrist, Dr. Sofia Grewal, but mischaracterized the nature of her assessment.  According to the ALJ, "[o]n the exhaustive list of symptoms, Dr. Grewal marked them all for the claimant, yet she did not provide any other diagnosis that would support the laundry list of symptoms she marked on the checkbox form."  (Tr. 1058)  Upon review of the record, the Court agrees with Plaintiff that Dr. Grewal actually recorded both check marks and x's, identifying approximately 20 out of 56 signs and symptoms that Plaintiff exhibited.  (Tr. 484)  Dr. Grewal indicated that Plaintiff would be unable to meet competitive standards with respect to completing a normal workday without symptoms, and performing at a consistent pace without an unreasonable number of breaks.  (Tr. 485)  She further stated Plaintiff's impairments or treatment would cause him to miss work more than four days per month.  (Tr. 487)  The ALJ found this opinion was not persuasive, for reasons similar to those given for Dr. Frankel.  (Tr. 1058)[13]

---

[11] In a Treatment Summary provided on May 15, 2017, Dr. Frankel clarified that Plaintiff's attendance at their therapy sessions was "generally consistent until the fall of 2016 when Mr. Schnegelberger began missing appointments.  In December 2016 he indicated that he intended to discontinue treatment due to financial problems and insurance issues."  (Tr. 449)

[12] Although Dr. Frankel rendered her opinion prior to Plaintiff's amended alleged onset date, she opined that his prognosis was poor.  (Tr. 476)

[13] Again, although Dr. Grewal provided her opinion prior to Plaintiff's amended alleged onset date, she noted that his prognosis was "guarded to fair".  (Tr. 483)

With respect to consultative examiner Alison Burner, M.A., who evaluated Plaintiff on July 17, 2017, the ALJ referenced Ms. Burner's conclusion that Plaintiff suffered from severe impairment in activities of daily living and social functioning, and mild impairment in concentration, persistence or pace.  (Tr. 1058)  The ALJ did not acknowledge, however, that after stating Plaintiff kept his eyes closed throughout the examination, Ms. Burner concluded her report as follows:  "Based upon this evaluation, there does appear to be psychological symptomology which would negatively affect obtaining or maintaining employment at this time.  He reported significant depression that interferes with his ability to attend work and maintain work and significant anxiety/panic attacks which would cause avoidance of the workplace."  (Tr. 469, 473) The ALJ found Ms. Burner's evaluation was not persuasive, as follows:

> Ms. Burner used old criteria[14] and it is unclear what the word severe indicates as far as functioning.  The assessment is not supported by her examination which indicated the claimant had average mental status regarding numerical reasoning, mental control, social judgment, memory and abstract reasoning; appropriate dress and grooming.  It is also not consistent with the records at the hearing level that showed the claimant was responding well to treatment, had not been hospitalized and had no emergency department visits regarding his mental health.

(Tr. 1058-1059 (citations omitted)).

The ALJ summarized the December 10, 2018 report from Plaintiff's treating psychologist, Lynn McDaniel, Ph.D., in relevant part as follows:  "[C]laimant had marked limitations in his ability to…sustain an ordinary routine without special supervision…[and] moderate limitations in his ability to function independently, work a full day without needing excessive breaks, and maintain socially acceptable behavior….She noted he would work eleven to twenty percent below average in overall pace of production, would miss work three times a month or more, and need to

---

[14] The ALJ does not explain what she means by "old criteria."

leave early or be late twice a month." (Tr. 1059)  The ALJ found Dr. McDaniel's opinion was "not persuasive as to any finding more than consistent with a moderate limitation in functioning. The extreme and marked limitations are not supported by the therapy notes during this period, which indicated the claimant was able to control any impulses he may have[15]…It is also not supported by later records at the hearing level that showed the claimant was responding well to treatment, had not been hospitalized and had no emergency department visits regarding his mental health." (Tr. 1059-1060 (citations omitted)).

The ALJ next considered the report from Dr. Shea Voelker, Psy.D., who completed a psychological consultative examination of Plaintiff on January 28, 2021. (Tr. 1060) Dr. Voelker concluded Plaintiff had moderate limitation in his ability to understand, remember and apply information, and marked limitation in the areas of interaction with others; concentration, persistence and pace; and ability to adapt and manage oneself. (Tr. 1507-1508)[16] The ALJ found Dr. Voelker's assessment with respect to understanding, remembering and applying information persuasive, as it was "supported by the record showing brain fog and some issues with his memory." (Tr. 1060) She found the remainder of the assessment not persuasive, however. (*Id.*)

---

[15] The ALJ reached a curious conclusion with respect to Dr. McDaniel's assessment of Plaintiff's ability to interact with others, as follows:  "Dr. McDaniel noted that the claimant exhibited significant difficulty interacting with others due to anxiety, depression and general distrust of others.  However, the undersigned notes that there were extensive discussions about the claimant manipulating and using people for his own ends, which is not consistent with her statement that he had difficulty interacting with people." (Tr. 1059-1060 (citations omitted)).  It is unclear how the ALJ reached her conclusion that Plaintiff's ability to manipulate and use people for his own ends equates to ease in interacting with others.

[16] In the observations and mental status examination portion of her report, Dr. Voelker stated in part as follows:  "[Plaintiff] had difficulties due to some apparent anxiety in the examination. He sat in the furthest chair from the examiner and for much of the examination he closed his eyes while answering questions.  He appeared to have some mild shaking of his hands at times too. Social skills appeared greatly impacted by all of this." (Tr. 1505)

Finally, the ALJ considered the mental medical source statement provided on March 16, 2022 by Plaintiff's most recent treating social worker, Lauren Komp.  Ms. Komp found Plaintiff had marked limitation in many areas, including his ability to sustain an ordinary routine and regular attendance, and work a full day without needing more than the allotted number or length of rest periods.  (Tr. 1722-1723)  She further found Plaintiff's overall pace of production in a low-stress environment during an 8-hour workday would be 31% or more below average, and that he would both miss work and be late or need to leave early three times a month or more due to psychologically-based symptoms.  (Tr. 1722, 1724)  The ALJ found Ms. Komp's opinion was not persuasive, as it was not supported by the treatment notes indicating mainly normal mental status examinations (other than restricted affect and depressed mood), and not consistent with treatment notes indicating Plaintiff's nightmares and sleep were improved and his anxiety was manageable. (Tr. 1060-1061)

After "careful consideration of the entire record", the ALJ determined that Plaintiff had the RFC to perform light work, with the following limitations:

> [O]ccasional climbing of ramps and stairs.  He cannot climb ladders[,] ropes or scaffolds.  The claimant can occasionally stoop, kneel, crouch, and crawl. He can have no exposure to unprotected heights and hazardous machinery, and only occasional exposure to extreme cold or vibrations.  He is able to learn, remember and carry out simple routine tasks, and use reason and judgment to carry out such tasks, can use reason and judgment to complete tasks in a timely manner while ignoring or avoiding distractions.  He can perform work with only gradual changes in job settings and duties.  He is able to sustain an ordinary routine and regular attendance without needing more than the standard number of breaks or rest periods.  The claimant can perform work with only occasional interactions with supervisors and coworkers.  He can have no contact with the general public, and perform no tandem tasks.

(Tr. 1045)  Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as photocopy

machine operator, mail clerk, and office helper.  (Tr. 1062)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 12, 2017, the date the application was filed.  (*Id.*)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Statement of Material Facts, which the Commissioner admitted with certain additions and clarifications.  (ECF Nos. 19-1, 25-1)  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## III.   Discussion

Plaintiff challenges the ALJ's decision on two grounds:  (1) that the ALJ failed to comply with 20 C.F.R. § 416.920c, as she did not properly address the supportability and consistency factors in relation to the medical opinions of record; and (2) that the ALJ failed to include a proper credibility determination.  (ECF No. 19)  The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled.  (ECF No. 25)

### A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'"  *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC Determination

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 416.945(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

C.  Consideration of Medical Opinion Evidence

16

Plaintiff filed his applications for benefits after March 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 416.920c. Under this regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. § 416.920c(a), (c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he or she] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 416.920c(b)(2).[17] An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)). See also *Starman v. Kijakazi*, No. 2:20-CV-00035- SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). An ALJ need not explain in his or her decision how he or she considered the other factors. 20 C.F.R. § 416.920c(b)(2).

---

[17] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). "Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

As noted above, with the exception of portions of the opinions of Drs. Markway and Voelker, the ALJ found all the medical opinions in the record not persuasive.[18]   Particularly troubling is the ALJ's rejection of all medical opinion evidence regarding Plaintiff's ability to stay on task and achieve regular attendance in the work environment.   During both hearings the vocational expert was asked about absenteeism and rest breaks.  (Tr. 76, 1896)  The first vocational expert testified that an individual who needed to miss work five days per month would be unemployable.  (Tr. 76)  The second vocational expert went further, stating an individual would not be employable if he were absent more than one day per month, or needed more than the allowable number of rest breaks.  (Tr. 1896-1897)

With the exception of Dr. Markway, every medical professional opined that Plaintiff would experience great difficulty in one or both of the areas of absenteeism and concentration.  (*See* Tr. 478, 480 (Dr. Frankel finds Plaintiff unable to meet competitive standards in his ability to maintain regular attendance and be punctual, and that on average he would be absent from work more than four days per month); Tr. 485, 487 (Dr. Grewal makes the same findings); Tr. 473 (Ms. Burner states there appears to be "psychological symptomology" that would negatively affect Plaintiff's ability to obtain or maintain employment); Tr. 1009-1010 (Dr. McDaniel finds Plaintiff has marked[19] limitation in his ability to sustain an ordinary routine and regular attendance, and would be absent from work due to psychologically-based symptoms three or more times per month); Tr. 1507 (Dr. Voelker opines that Plaintiff experiences marked limitation with respect to concentration, persistence and pace); and Tr. 1722-1724 (Ms. Komp opines Plaintiff has marked[20]

---

[18] The ALJ rejected the opinions of every one of Plaintiff's treating providers in their entirety.

[19] "Marked" is defined as follows:   "Functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  (Tr. 1009)

[20] "Marked" is defined as follows:   "Functioning in this area independently, appropriately, effectively, and on a sustained basis is **seriously limited**."  (Tr. 1722 (emphasis in original))

limitations in his ability to sustain an ordinary routine and regular attendance and work a full day without needing more than the allotted number or length of rest periods, and that he would both miss days of work and be late or need to leave early due to psychologically-based symptoms three or more times per month).  Despite having posited the appropriate hypothetical to the vocational experts, the ALJ rejected the medical opinions on these topics without sufficient explanation.[21]

An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7.  The ALJ did not undergo this process here.  In other words, although she thoroughly summarized the medical evidence of record, the ALJ did not justify how she translated her understanding of the medical evidence into a conclusion that Plaintiff could successfully maintain employment at the light exertional level.  *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

The ALJ's conclusion ignored the overwhelming consistency among the examining and treating medical providers.  Based on the foregoing, the Court finds the ALJ erred in discounting without sufficient explanation the medical opinions regarding Plaintiff's absenteeism and off-task behavior.  *See Goolsby v. Kijakazi*, No. 4:20CV1488 RWS, 2022 WL 910262 (E.D. Mo. Mar. 29,

---

[21] The ALJ attempted to support her determination by pointing to Plaintiff's "generally normal mental status examinations."  She neither accounted for the numerous abnormal findings therein, however, nor more importantly, explained how the findings equated to an ability to attend work on a regular basis.

2022).  The Court therefore will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either her original conclusion as to Plaintiff's RFC, or any amended RFC determination she may render. [22]

## IV.  Conclusion

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

Dated this 12th day of December, 2023.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE

---

[22] Because the Court is remanding this matter for further consideration, the ALJ will have the opportunity to evaluate in greater detail the credibility of Plaintiff's subjective complaints.